UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

       -v-

                                                S7 10 Cr. 918 (RPP)

VADIM CHERVIN,
      a/k/a "Vadik,"
LYNN BRAUNSTEIN,
WILLIAM GIBBS,

       Defendants.
------------------------------------------------------------X

## Statement of the Case

The defendant, Vadim Chervin, was indicted on October 7, 2010, superseded on June 7, 2012 for fraud in processing and collecting payments for medical tests arising from no-fault insurance claims after accidents involving automobiles. He moves here, *in limine,* prior to trial, to bar the Government from introducing, either as part of its case in chief or as impeachment evidence when he testifies, a conviction via a plea of guilty on December 8, 1995, in the United States District Court for the District of New Jersey under the name of Vadim Brouselovsky[1] to count 20 of a multi-count indictment to violation of 18 USC

---

[1] That is the name that Mr. Chervin was born with. He was adopted by Aaron Chervin. The name of Vadim Chervin had been disclosed to the Court. The Government should not be allowed to use the name difference to impute dishonesty.

1343 and section 2 of title 18, fraud.

## Facts

Vadim Chervin was charged in one count of a three count indictment superseded by a two count indictment alleging that he, along with other people, mostly unnamed in the superseded indictment, engaged in fraud. The charge is that he, along with others including his father, generated and submitted fraudulent claims of medical charges for tests that were either non existent, inflated, or not medically necessary. His father has already pleaded guilty as have almost all the others in the original indictment.

In December of 1995, Mr. Chervin pleaded guilty in a gas tax prosecution in which he admitted in his plea allocution that during the years 1991 through 1992 he was employed by the offices of King's Motor Oils, Inc., which he knew was in the business of the purchase and sale of fuel. Mr. Chervin knew that the owners of King's were involved in illegal business activity involving other companies and that the owners were hiding money from the United States Government and the State of New Jersey. He had become aware that the owners of King's had concocted a scheme to evade taxes. He, in the course of his clerical duties, performed acts which, while not in themselves illegal, promoted the conspiracy by placing a wire transfer of $562,380 to the bank account of Golden State, one of the

2

shadow companies used by the owners of King's[2]. He was a minimal participant (Plea agreement Schedule A, also attached).

## Discussion

Applications based on the potential affirmative use of prior convictions require an overview of Rules, 404(b), 609(a), 609(b) and 403 of the Federal Rules of Evidence. They are often, as they are here, intertwined and subject to a judge's well-informed discretion.

In the case at bar it is without question that the Government will attempt to introduce the prior conviction for impeachment purposes as a crime involving dishonesty. The Government will also seek to use the misconduct affirmatively despite the fact that the conviction is more than ten years old (1995). While we address each application separately, it should be clear that the Court's permission to use the information on either end of the case, either affirmatively or for impeachment purposes, should be withheld because no matter what the Court says to the jury by way of a limiting charge, where a defendant charged with a fraud has a conviction for another fraud, no matter how dissimilar, the niceties distinguishing the two will be ignored.

We recognize that legitimate evidence is almost always prejudicial to the

---

[2] A transcript of the plea allocution is attached as an addendum to this memorandum.

party opposing it; the question is, is it too prejudicial? We suggest here, at the beginning of the argument that this guilty plea's prejudicial value is overwhelming and, at least as to Rule 404(b), the evidence should be banned. See *United States v. Aboumoussallem*, 726 F.2d 906 (2d Cir. 1984).  See also *Huddleston v. United States*, 485 U.S. 681(1988). There is no staleness provision written into this rule as there is in Rule 609, but Courts have recognized the attenuation caused by the passage of time on the usefulness of that evidence. See *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir 1998).

We respectfully suggest that where a minor participant commits one ministerial act (the deposit of illicit moneys in an account not for his benefit) over fifteen years ago, that conduct tells us nothing about his motives today.

This evidence does not "prove" any of the traditional covers for admission of the testimony.  It is true that the motives for any fraud are the same, profit. We do not believe that the drafters of the Rule had that kind of motive in mind. Nor is there a similarity of opportunity. For instance, had Mr. Chervin been in charge of collecting information to submit false bills in the 1995 prosecution, that might have real relevancy. His prior conviction is not evidence of a plan. As a clerk committing one act, he clearly did not plan anything. In short, the crime for which he has pleaded guilty has nothing to do with this case and will serve only to prove

4

bad character despite the court's instruction to the jury that it may not be used for that purpose.

### Cross Examination

Less clear, but still on analysis in the defendant's favor is the use of that conviction for impeachment when Mr. Chervin testifies. Mr. Chervin's conviction is for a crime of dishonesty which is not by itself subject to Rule 403 analysis. Use of material more than ten years old is excludable for staleness under Rule 609(b). "[C]onvictions over ten years old generally do not have much probative value." See *Fed. R. Evi. 609 (b)* advisory committee's notes: *accord* **United States v. Brown**, 606 F.Supp 2d 306 (EDNY 2009) In such cases, Rule 403 analysis once again becomes a factor for the Court to consider in determining whether to permit introduction of the evidence in spite of its ancient vicinage.

That analysis is the reverse of the usual Rule 403 balance where the "burden" is on the opponent of the proffered evidence to show that the prejudicial value substantially outweighs its probative value. Here the proponent has the "burden" to show that its probative value outweighs its prejudicial effect. See **United States v. Cavender**, 578 F.2d 528 (4th Cir. 1978), but see **United States v. Homes**, 822 F.2d 802 (8th Cir 1987).

One would think the government has a heavy burden under these

circumstances which must be supported by "specific facts and circumstances". *Fed. R. Evi. 609 (b)(1)*. Moreover, "[w]hen stale convictions are offered for the purposes of impeaching a witness, they often shed little light on the present tendency of the witness toward truthfulness and veracity." *United States v. Sims*, 588 F.2d 1145,1148 (6th Cir. 1978).

The testimony of Mr. Chervin in this matter is crucial. He ran a medical billing service prior to his alleged involvement in this fraud. It is the collection of billing data to support the bill that is critical, particularly because the evidence will show that a substantial number of the claims in the normal course are challenged by the insurance companies, and are therefore, subject to arbitration.

Factors to be considered in this balancing analysis are generally the same as for admission of a felony conviction under Rule 609(a) and include: (1) the impeachment value of the crime; (2) the point in time of conviction (just how stale is it?), and the witness' subsequent history (is the assumption of reform arising from the passage of more than ten years belied?); (3) similarity between the past crime and the crime charged; (4) the importance of the defendant's testimony, if the defendant is the targeted witness; and (5) the centrality of the credibility issue to the case. *United States v. Sloman,* 909 F.2d 176 (6th Cir. 1990).

Mr. Chervin's end of, and his participation in the business must be

explained by him[3]. Absent the explanation of the intricacies of the business by Vadim Chervin, who has no intervening brushes with the law, as well as why he was working in the same office as another defendant who was the lawyer presenting the cases for arbitration, the jury is likely just by the sheer volume of the work and close connections between two of the defendants, to presume criminality from the existence of this stale conviction.

## The Superseded Indictment

The defendant wishes to offer the superseded indictment, the plea minutes of the defendants in that indictment who have pleaded guilty, the allocution of the defendant (Lamont) who was offered and accepted a deferred prosecution, and of course, various telephone conversations and emails which place Mr. Chervin's alleged transgressions in the context of the larger indictment. Mr. Chervin will not contest that there was a conspiracy to defraud the insurers of the no fault benefits they paid.

Rule 401 of the Federal Rules of Evidence militates for the admission of this material. Mr. Chervin's defense is that he was merely a person who collected

---

[3] It should be noted that Aaron Chervin was convicted in the same District of New Jersey gas tax conspiracy. As opposed to Vadim, who received a sentence of probation, Aaron received a jail sentence after he cooperated with the Government. The participation of Aaron (who already has pleaded guilty in this case) in both conspiracies, although in disparate roles, will create the presumption in the mind of the jurors of criminal propensity.

explained by him[3]. Absent the explanation of the intricacies of the business by Vadim Chervin, who has no intervening brushes with the law, as well as why he was working in the same office as another defendant who was the lawyer presenting the cases for arbitration, the jury is likely just by the sheer volume of the work and close connections between two of the defendants, to presume criminality from the existence of this stale conviction.

## The Superseded Indictment

The defendant wishes to offer the superseded indictment, the plea minutes of the defendants in that indictment who have pleaded guilty, the allocution of the defendant (Lamont) who was offered and accepted a deferred prosecution, and of course, various telephone conversations and emails which place Mr. Chervin's alleged transgressions in the context of the larger indictment. Mr. Chervin will not contest that there was a conspiracy to defraud the insurers of the no fault benefits they paid.

Rule 401 of the Federal Rules of Evidence militates for the admission of this material. Mr. Chervin's defense is that he was merely a person who collected

---

[3] It should be noted that Aaron Chervin was convicted in the same District of New Jersey gas tax conspiracy. As opposed to Vadim, who received a sentence of probation, Aaron received a jail sentence after he cooperated with the Government. The participation of Aaron (who already has pleaded guilty in this case) in both conspiracies, although in disparate roles, will create the presumption in the mind of the jurors of criminal propensity.

material for submission to the insurance companies. This material was collected prophylactically as the insurance companies challenged a high percentage of the claims which went to arbitration and fair hearing. As part of his job he had to make sure that the codes for the services rendered were accurate as inaccuracy would result in either an under billing or an over billing, neither of which was desirable.

The Government has, by superseding and cutting out the organizers of the scam and the evidence against him, promoted Mr. Chervin to the head of the indictment. We intend to show the jury how the Government disingenuously included Mr. Chervin in an indictment far more extensive in scope and in time, and argue to the jury that Mr. Chervin, as a minor person under the Government's original indictment, cannot be taxed with notice of what was going on by the documents the Government intends to offer as proof of fraud, even if they came across Mr. Chervin's desk.

There is little case law on this subject. In ***United States v. Castillo-Arvizu*** 81 F3d 170 (9th Cir. 1996) (unpublished, copy attached), the Ninth Circuit, using an abuse of discretion standard argued that an indictment is not admissible as evidence of the later indictments's infirmity. We are not urging its admission for that purpose but are using it to demonstrate the Government's change of position.

The court has it in its discretion to admit the proffered evidence.

Dated: New York, New York
      July 2, 2012

                                                    Respectfully submitted,

                                                   _____
                                                   Frederick H. Cohn
                                                   Attorney for the Defendant
                                                   Vadim Chervin
                                                   111 Broadway
                                                   Suite 1805
                                                   New York, NY 10006
                                                   212-768-1110